IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND SANDERS,

    Plaintiff,                                   No. 2:09-cv-01021 KJN

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.                               ORDER
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), and partially denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Act.[1]  (Pl.'s Mot. for Summ. J., Dkt. No. 20.)  Plaintiff only challenges the Commissioner's decision as to the application for DIB under Title II of the Act, which was denied on the on the ground that plaintiff was not disabled as of, or prior to, his date when last insured, September 30, 1999.  (Pl.'s Mot. for Summ. J. at 1:14-17.)

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge.  (Dkt. Nos. 7, 9.)  This case was reassigned to the undersigned by an order entered February 9, 2010.  (Dkt. No. 16.)

Plaintiff contends that the Administrative Law Judge's ("ALJ") determination that plaintiff was disabled as of March 17, 2005, but not prior to September 30, 1999, is not supported by substantial evidence or is based on legal error. He argues that the ALJ erred by: (1) not using the services of a medical advisor to establish the proper date of onset of plaintiff's disability; (2) finding that plaintiff did not suffer from a "severe" impairment during the relevant time period; and (3) rejecting the opinions of two of plaintiff's treating physicians, Leslie K. Ellis Eaton, M.D. ("Dr. Eaton") and George Scarmon, M.D. ("Dr. Scarmon"), regarding the date of onset.[2] The Commissioner filed an opposition to plaintiff's motion, which the court construes as a cross-motion for summary judgment.[3] (Dkt. No. 21.) For the reasons stated below, the court will grant plaintiff's motion for summary judgment in part and remand this matter for further proceedings.

I.   BACKGROUND[4]

Plaintiff was 62 years old as of the date of the ALJ's decision.[5]  (See

---

[2] Although plaintiff's brief addresses the three alleged errors noted above, it also refers to a separate set of four alleged errors that do not match the three issues that plaintiff substantively briefed. (Compare Pl.'s Mot. for Summ. J. at 9:7-13, with id. at 9:13-15:20.) It appears that plaintiff's counsel may have inadvertently "copied-and-pasted" inapplicable language from the brief in another matter into the brief for this matter. The undersigned will only address the issues actually briefed by plaintiff.

[3] The Commissioner's brief is entitled "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT," and does not expressly move for summary judgment on plaintiff's claims. (See generally Dkt. No. 21; Scheduling Order at 1 ("Within 30 days after plaintiff's motion for summary judgment and/or remand is served, defendant shall file any opposition, including cross motions."), Dkt. No. 4.) Notwithstanding the absence of any express cross-motion for summary judgment by the Commissioner, the undersigned will construe the Commissioner's brief as including such a cross-motion in light of the fact that the Commissioner's brief requests that the ALJ's decision be affirmed.

[4] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant the issues presented by the parties.

[5] Oddly, the ALJ stated that plaintiff was born in 1946, but was only 59 years old as of the June 2007 decision and was 51 years old as of March 17, 2005. (AT 26, 33.)

2

Administrative Transcript ("AT") 33.) He previously worked as a doctor of podiatry. (AT 342.) Plaintiff ceased working as a podiatrist in 1995, mainly because of migraine headaches and his inability to retain staff. (AT 342.) He subsequently attempted to perform other forms of work, including work as a test scorer. (AT 347-48.)

### A.  Procedural Background

On April 20, 2005, plaintiff filed applications for DIB and SSI benefits, alleging an onset date of March 20, 1996.[6] (See AT 60-64, 349.) The Social Security Administration denied plaintiff's application initially and upon reconsideration. (AT 41-42, 48-52, 55-59.) Plaintiff filed a request for a hearing before an ALJ, and the ALJ conducted a hearing regarding plaintiff's applications on March 13, 2007. (AT 46, 337-72.) Plaintiff, who was represented by counsel at the hearing, was the only witness who testified at the hearing.

In a decision dated June 1, 2007, the ALJ granted plaintiff's application in part. (See AT 23-34.) He granted plaintiff's application for SSI benefits, with a disability onset date of March 17, 2005, but denied plaintiff's application for DIB on the basis a finding that plaintiff was not disabled prior to the expiration of his insured status on September 30, 1999.[7] The ALJ's

---

[6] Although the ALJ consistently refers to March 17, 2005, as the date plaintiff applied for benefits, plaintiff's applications reflect a date of April 20, 2005. (AT 60.)

[7] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is

decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  (AT 5-7.)  Plaintiff subsequently filed this action.

      B.      Summary of the ALJ's Findings

The ALJ conducted the five-step, sequential evaluation and concluded that plaintiff was disabled within the meaning of the Act, but only as of March 17, 2005.  (AT 33.)  Initially, the ALJ concluded that, for the purposes of plaintiff's DIB application, plaintiff last met the insured status requirements of the Act on September 30, 1999.[8]  (AT 32.)  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since March 20, 1996, the alleged date of onset.  (AT 33.)

At step two, the ALJ concluded that plaintiff did not have a "severe" impairment or combination of impairments prior to September 30, 1999, and was thus not disabled as of that date.  (AT 32, 33.)  The ALJ rejected plaintiff's claim that prior to September 30, 1999, he was

---

      appropriate.
           Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
           Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

           Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

    [8] In order to be eligible to receive DIB, a claimant must demonstrate that he or she is disabled prior to the expiration of his or her insured status, or "date last insured," under the Act.  See, e.g., Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998) ("In order to obtain disability benefits, [plaintiff] must demonstrate that he was disabled prior to his last insured date.") (citing 42 U.S.C. § 423(c); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995) ("[T]he individual must be insured at the time that the individual suffers from the disability in order to receive benefit payments.").

4

disabled as a result of the following impairments: a severe depressive disorder, migraine headaches, carpal tunnel syndrome, and symptoms secondary to peripheral neuropathy.[9] (AT 27.) This finding at step two ended the ALJ's sequential analysis of plaintiff's DIB application.[10] (AT 32.) The ALJ concluded, however, that as of March 17, 2005, plaintiff suffered from a "severe depressive disorder," and continued the sequential analysis as it related to plaintiff's application for SSI, from March 17, 2005 forward. (See AT 32.)

The ALJ did not make an express step three finding, but concluded, at steps four and five, that as of March 17, 2005, plaintiff's depressive disorder precluded him from performing his past work and that there were not a significant number of jobs in the national economy that plaintiff could perform. (AT 33.) Accordingly, the ALJ concluded that plaintiff was disabled, and thus entitled to SSI benefits, as of March 17, 2005. (AT 34.)

II.     STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).

---

[9] "Peripheral neuropathy is a dysfunction of a spinal nerve or nerves distal to a plexus or root. It includes numerous syndromes characterized by varying degrees of sensory disturbances, pain, muscle weakness and atrophy, diminished deep tendon reflexes, and vasomotor symptoms, alone or in any combination." Mark H. Beers, M.D., et al., eds., The Merck Manual of Diagnosis and Therapy 1903 (Merck Research Labs., 18th ed. 2006)

[10] The ALJ found that plaintiff's allegations of limitations prior to the last insured date were not credible. (AT 29.) Plaintiff has not challenged the ALJ's adverse credibility finding here.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

III.   ANALYSIS

    A.   Whether the ALJ Erred By Inferring A Disability Onset Date Without Consulting A Medical Advisor

Plaintiff first claims that the ALJ committed legal error by inferring a disability onset date of March 17, 2005, with respect to plaintiff's severe depressive disorder, without consulting a medical advisor or expert. The undersigned agrees and will remand this matter for further proceedings.

Social Security Rule 83-20 ("SSR 83-20") addresses the situation where the evidence in the record does not indicate a definite date of onset of a claimant's disability and, as a result, an ALJ must make medical inferences regarding the date of onset. Difficulty in determining the disability onset date may arise in the case of slowly progressing conditions, including mental impairments. Id. ("With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became

6

disabling.  Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available.  In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process."); see also Morgan v. Sullivan, 945 F.2d 1079, 1081 (9th Cir. 1989) ("Mental disorders may manifest themselves over a period of time.  Consequently, the precise date of onset of a disabling psychological impairment may be difficult, or impossible, to ascertain, and the services of a specialist may be necessary to infer the onset date.").  SSR 83-20 provides, in part:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

Interpreting the policy statement contained in SSR 83-20, the Ninth Circuit Court of Appeals has held that where the date of the onset of the disability is unclear or ambiguous, an ALJ *must* consult with a medical expert or advisor to determine disability onset date and commits reversible legal error by failing to call a medical expert or advisor before inferring an onset date.[11]  See, e.g., Armstrong, 160 F.3d at 589-90 ("If the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'") (quoting DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir. 1991)); Morgan v. Sullivan, 945 F.2d 1079, 1082-83 (9th Cir. 1989); see also

---

[11] This requirement is limited to the situation where an ALJ actually determines that the claimant was disabled at some point, but the date of onset is unclear.  Where an ALJ determines that the claimant was not disabled at *any* time, he or she is not required to consult with a medical expert or advisor.  See Sam v. Astrue, 550 F.3d 808, 810-11 (9th Cir. 2008) (per curiam).

Quarles v. Barnhart, 178 F. Supp. 2d 1089, 1095-97 (N.D. Cal. 2001) ("The Ninth Circuit has held, based on SSR 83-20, that where medical inferences regarding the onset date need to be made, the ALJ must consult a medical expert before determining the onset date. This is regardless of how careful and well-supported the ALJ's inference may be." (citations omitted)).

Here, the ALJ ultimately concluded that plaintiff's severe depression rendered him disabled as of March 17, 2005, the date of plaintiff's application for benefits, but that plaintiff was not disabled prior to September 30, 1999, plaintiff's last insured date. However, treatment notes in the record support plaintiff's contention that he suffered from at least some degree of depression prior to September 30, 1999. (See, e.g., AT 130 (treatment notes dated May 6, 1999, noting a history of major depression); AT 132 (treatment notes dated April 22, 1999, noting impression of Major Depressive Disorder); AT 134 (treatment notes dated December 30, 1998, noting impression of Major Depressive Disorder).) Additionally, in May 2005 and May 2006, Dr. Eaton opined that plaintiff suffered from limitations caused by his depression, and indicated that plaintiff's depression was limiting prior to the expiration of plaintiff's insured status. (AT 262-69, 303.) The ALJ relied on Dr. Eaton's opinions in finding plaintiff disabled *after* his last insured date, but rejected her opinion that plaintiff's limitations arose prior to September 1999. Treatment notes made by plaintiff's clinical psychologists also noted that plaintiff suffered from a Major Depressive Disorder in the months just following plaintiff's last insured date. (See, e.g., AT 128, 130.)

Even setting aside whether the ALJ properly rejected Dr. Eaton's retrospective opinion about the limitations caused by plaintiff's depression, the medical records do not provide a precise date of onset of plaintiff's disabling depression. There is ambiguity regarding whether plaintiff was depressed to disabling levels prior to September 30, 1999, and, accordingly, the ALJ was required to call on the services of a medical advisor or expert to assess the entire record and determine an onset date. He did not do so. The ALJ adopted and rejected various pieces of evidence and inferred an onset date. The undersigned concludes that this was error and that

1  remand is required so that the ALJ may consult a medical advisor or expert to establish a
2  disability onset date of plaintiff's disabling depressive disorder.
3          The Commissioner contends that the ALJ "did not attempt to infer that date on his
4  own," arguing that "State agency physicians opined that Plaintiff did not have a severe physical
5  or mental impairment as of his [date last insured]." (Def.'s Br. at 2 (citing AT 29, 243-61.)  The
6  Commissioner is correct that the State agency physicians opined that plaintiff did not suffer from
7  a severe impairment as of September 30, 1999, and that the ALJ relied on those opinions.
8  However, the undersigned has concerns about the propriety of the ALJ's reliance on the agency
9  reports.  As an initial matter, it is unclear from the present record what medical records the State
10 agency physicians possessed and reviewed in arriving at their conclusion regarding plaintiff's
11 mental condition.  The Ninth Circuit Court of Appeals has indicated that a disability onset date
12 should be inferred based on *all available evidence*, and there is no indication here that the State
13 agency physicians reviewed all of the available evidence in concluding that plaintiff was not
14 disabled prior to September 30, 1999.  See DeLorme, 924 F.2d at 848 ("In the event that the
15 medical evidence is not definite concerning the onset date and medical inferences need to be
16 made, SSR 83-20 requires the administrative law judge to call upon the services of a medical
17 advisor and to obtain *all evidence which is available* to make the determination" (emphasis
18 added).).  Relatedly, the only report with any detail regarding plaintiff's history of depression
19 indicates that the State agency physician only considered plaintiff's medical history through April
20 23, 1999.  (AT 258.)  The agency report dated July 15, 2005, includes a section entitled "Medical
21 History And Objective Findings" that assesses the medical records covering a period from May
22 22, 1996 through April 23, 1999.  (AT 258-59.)  It appears that this physician only considered
23 medical records generated prior to the date of last insured, but did not consider any medical
24 records generated after April 1999.  Medical evidence that post-dates the last insured date is
25 relevant to the establishment of the disability onset date.  See, e.g., Armstrong, 160 F.3d at 590
26 (concluding that although the plaintiff was not diagnosed with mental disorders until 1994, his

1  condition could have been disabling prior to his last insured date in 1994); <u>Quarles</u>, 178 F. Supp.
2  2d at 1097 (finding that the ALJ improperly discounted a psychiatric evaluation that occurred
3  two years after the last insured date because the plaintiff's mental disorders could have been
4  disabling long before that psychiatric report).
5        The undersigned concludes that the ALJ should have consulted a medical expert
6  or advisor to assist in the determination of an onset date with respect to plaintiff's severe
7  depressive disorder.  And such a determination should have been made in consideration of the all
8  of the available medical evidence.  This did not occur and, accordingly, the undersigned will
9  remand this matter to the agency for further proceedings regarding the onset of plaintiff's
10 disabling depressive disorder.
11     B.    <u>Whether the ALJ Erred at Step Two By Finding No Severe Impairments as of Plaintiff's Last Insured Date</u>
12
13       Plaintiff further contends that the ALJ erred at step two by finding that plaintiff
14 did not suffer from any "severe" physical or mental impairments prior to his last insured date.
15 The undersigned will not address plaintiff's argument with respect to plaintiff's mental
16 impairments because this case will be remanded for further development regarding the date of
17 onset of plaintiff's severe depressive disorder, which will necessarily include a determination of
18 whether plaintiff had a severe mental impairment prior to his last insured date.  The undersigned
19 will address, however, plaintiff's arguments regarding his physical impairments.
20       At step two of the sequential evaluation, the ALJ determines whether the claimant
21 has a medically "severe" impairment or combination of impairments.  <u>See</u> 20 C.F.R.
22 §§ 404.1520(a)(4)(ii); <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing
23 <u>Bowen v. Yuckert</u>, 482 U.S. 140-41 (1987)).  An impairment is severe when it significantly
24 limits a claimant's "physical or mental ability to do basic work activities" and lasted or is
25 expected to last "for a continuous period of at least 12 months."  <u>See</u> 20 C.F.R. §§ 404.1509,
26 404.1520(a)(4)(ii), (c), 404.1521(a); <u>accord</u> 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909.  Basic

work activities refer to "the abilities and aptitudes necessary to do most jobs."[12]

Although centered around the term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless claims." See Smolen, 80 F.3d at 1290. The purpose is to identify "at an early stage those claimants whose medical impairment is so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account." Bowen, 482 U.S. at 153. "An impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and quotation marks omitted).

In regards to his purported physical impairments, plaintiff argues that "[t]he treatment records documented that he suffered from . . . migraine headaches, and carpel [*sic*] tunnel syndrome." (Pl.'s Mot. for Summ. J. at 11:6-8.) Plaintiff relies on the following medical evidence from the relevant period to substantiate that he had a severe impairment or combination of impairments prior to his last insured date.[13] First, he references treatment notes dated August 28, 1996, which reflect a neurology referral due to "numbness and tingling hands (bilat) for 6 weeks." (AT 165.) Second, he notes that he was referred for cervical spine x-rays due to the numbness in his hands, and that a June 16, 1997 radiological report showed an impression of "Degenerative disc and osteoarthritic changes at C5-C6 with neural foraminal encroachment on the right." (AT 143.) Third, plaintiff cites treatment notes dated April 23, 1999, which reflect

---

[12] The applicable regulation provides examples of such abilities and aptitudes, which include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521.

[13] Plaintiff also relies on notes of a September 22, 2000 neurology consultation, which post-dates his date when last insured. (AT 301.) However, those notes simply reflect plaintiff's self-reports regarding his headaches and carpal tunnel syndrome, and that plaintiff had been diagnosed with carpal tunnel syndrome in 1997.

11

his history of bilateral carpal tunnel syndrome and headaches. (AT 130-31.) Fourth, he relies on a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)," which was completed by Dr. Scarmon. (AT 305-06.) This report indicates that plaintiff suffered from bilateral neuropathy, which limited plaintiff's ability to reach, handle, feel, push, and pull, and conclusorily opines that plaintiff's "condition resulted in similar limitations as of September, 1999."[14] (AT 305-06.)

The ALJ addressed the medical records, other than Dr. Scarmon's assessment, as follows:

> In regards to the claimant's allegations of limitations due to "physical" impairments, including migraines and peripheral neuropathy, treatment records do not show that the claimant complained of or was diagnosed with peripheral neuropathy and there is only one reference to migraines in April of 1999 for which the claimant was prescribed medications (1F/4). The claimant reported he experienced migraines approximately once a month and that this was the reason he started using Demerol. He was prescribed over-the-counter Exedrin for his headaches.
>
> The undersigned notes that in a later progress note dated March of 2006, the claimant reported he first began experiencing numbness and pain in his lower extremities three years prior (approximately 2003). Thus, the claimant's own reports contradict his testimony of symptoms of peripheral neuropathy prior to 1999.
>
> The record shows an x-ray of the claimant's cervical spine was taken in June of 1997. The x-ray showed degenerative disc disease of the C5 and C6. There are no progress notes showing that the claimant complained of back pain, and no other abnormal findings noted in regards to the claimant's cervical spine.
>
> These are the only treating records submitted in regards to the claimant's alleged physical impairments for the period prior to his date last insured.

(AT 28.)

Plaintiff does not argue that the ALJ's characterization of these medical records is

---

[14] At the hearing before the ALJ, plaintiff's counsel indicated that Dr. Scarmon's inclusion of an opinion that plaintiff suffered similar functional limitations in 1999 was a result, in part, of the fact that plaintiff would have to prove disability as of his last insured date. (AT 349-50 ("That's one of the reasons that the treating psychiatrist added a supplemental sentence, and Dr. Scarmen [*sic*] did, as well, opining that there were similar functional limitations in '99.").)

incorrect with respect to the determination at step two. The undersigned also notes that the medical records other than Dr. Scarmon's medical assessment do not include an opinion that plaintiff's physical impairments actually limited his ability to perform basic work activities. It appears, however, that plaintiff's primary argument is that the ALJ erred in rejecting the opinion stated in Dr. Scarmon's medical assessment that plaintiff had work-related functional limitations and that those limitations resulted in similar limitations as of September 1999.[15] The ALJ favored the opinion of the State agency physicians who concluded that plaintiff did not have a severe impairment at step two. (AT 29.)

The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830. Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id. Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. Id. If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. Id. at 830-31; accord Valentine, 574 F.3d at 692. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)).

Because Dr. Scarmon's opinion that plaintiff suffered functional limitations in

---

[15] In his decision, the ALJ incorrectly referred to Dr. Scarmon's assessment as having been prepared by Dr. Eaton. (AT 29.)

1  September 1999 was contradicted, the ALJ was required to provide specific and legitimate
2  reasons for rejecting that opinion.  He provided the following reasons:

> Dr. [Scarmon] has failed to provide any objective medical findings in support of [his] diagnosis of bilateral peripheral neuropathy and it does not appear that [he] was treating the claimant during the period prior to his date last insured.  Furthermore, the records prior to the claimant's date last insured do not show that the claimant complained of symptoms of peripheral neuropathy, or was diagnosed with this disorder.

7  (AT 29.)

8  Although not all of the ALJ's reasons for rejecting Dr. Scarmon's opinion are
9  supported, the undersigned concludes that the ALJ provided sufficient, specific and legitimate
10 reasons for rejecting Dr. Scarmon's assessment that plaintiff had functional limitations in
11 September 1999.  The ALJ is correct that it does not appear that Dr. Scarmon treated plaintiff in
12 1999.  Furthermore, the ALJ correctly reasoned that Dr. Scarmon did not provide, describe, or
13 cite to objective findings in medical records from the period prior to September 30, 1999, in
14 support of his opinion that plaintiff had functional limitations prior to September 1999.  Dr.
15 Scarmon's opinion in this regard is conclusory and unsupported, and the ALJ was not required to
16 adopt it.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)
17 ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and
18 unsupported by the record as a whole, or by objective medical findings" (citations omitted).).
19 Plaintiff's assertion that Dr. Scarmon referenced plaintiff's treatment notes is not supported by
20 the record.  The ALJ also correctly stated that the record does not support a diagnosis of
21 peripheral neuropathy prior to September 30, 1999.  However, the ALJ incorrectly reasoned that
22 plaintiff did not complain of symptoms of peripheral neuropathy prior to his last insured date.
23 Plaintiff complained of numbness and tingling in his hands, which can be a symptom of
24 peripheral neuropathy, in August 1996.  Nevertheless, the ALJ's reasons on the whole are
25 specific and legitimate.

26 The undersigned concludes that the ALJ properly rejected Dr. Scarmon's opinion

regarding plaintiff's functional limitations in September 1999.  Accordingly, insofar as plaintiff's physical limitations are concerned, the ALJ did not err at step two by concluding that plaintiff did not have a severe physical impairment.

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 20) is granted in part.
2. The Commissioner's cross-motion for summary judgment is denied.
3. This matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).
4. The Clerk of Court is directed to enter judgment in favor of plaintiff.

IT IS SO ORDERED.

DATED: September 15, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE